IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DORIS MITCHELL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-12-2036 |
| WSG BAY HILLS IV, LLC, ET AL., | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

This is a diversity case in which the Plaintiff Doris Mitchell asserts claims of negligence and nuisance against the Defendants WSG Bay Hills IV, LLC and Century Golf Partners Management, LP.[1] Specifically, Mitchell resided in a residential community built adjacent to a golf course existing for the previous twenty-eight years. She was ultimately struck on the leg by an errant golf ball driven by an unknown golfer. The Plaintiff contends that the Defendants negligently failed to take sufficient measures to prevent errant golf shots from entering the residential community parking lot, and that the golf course next to which her residential community was constructed now constitutes a nuisance. Pending before this Court are Defendants Century Golf Partners Management, LP and WSG Bay Hills IV,

---

[1] In her Complaint, the Plaintiff also named Arnold Palmer Golf Management as a defendant in Counts 3 and 6. Compl., ECF No. 1. The Defendants argue that Arnold Palmer Golf Management is not a suable entity and cannot be served with process. Defs.' Mem. in Support of Mot. for Summ. J., ECF No. 17-1 at 1 n.1. Although a summons as to Arnold Palmer Golf Management was returned on July 23, 2012 (ECF No. 3), the Plaintiff does not address this issue in her Memorandum in Opposition (ECF No. 20-1). Notwithstanding, because summary judgment will be granted as to all claims and the case will be closed, this issue is moot.

LLC's Motion for Summary Judgment (ECF No. 17) and Motion to File Amended Answer (ECF No. 19). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant's Motions (ECF Nos. 17 & 19) are GRANTED and Defendants are entitled to judgment as a matter of law.

BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Plaintiff, Doris Mitchell, was a resident of Colorado at the time of the filing of this lawsuit and now resides in Maryland.[2] Compl. ¶ 4. Defendant WSG Bay Hills IV, LLC ("Bay Hills") is a Delaware limited liability company and is the owner of the Bay Hills Golf Club in Arnold, Maryland. *Id.* ¶ 5. Defendant Century Golf Partners Management, LP ("Century Golf") is a Texas limited partnership that manages and operates Bay Hills Golf Club. *Id.* ¶ 6. The Club was built in 1968. Defs.' Mem., ECF No. 17-1 at 2.

At all times relevant to the events giving rise to this case, the Plaintiff lived at the St. Andrews Condominiums in Arnold, Maryland. Pl.'s Opp. at 22-23; Mitchell Dep. 18. In 1996, St. Andrews was built adjacent to the Bay Hills Golf Club, which had existed at its present location since its construction in 1968. Compl. ¶ 15; Am. Ans. ¶¶ 2, 5-6; Defs.' Opp. at 2. Mitchell lived in the basement of a condominium unit owned by her daughter and son in law, Joann and William Sims. ECF No. 17-1 at 2; Mitchell Dep. 13.

---

[2] Although the Plaintiff only lived in Colorado for approximately six months and has moved back to Maryland, Mitchell Dep. 6-7, this fact is immaterial to this Court's jurisdiction because there is still complete diversity of citizenship between the Plaintiff, as a Maryland resident, and the Delaware and Texas Defendants. The Defendants have not challenged the diversity jurisdiction of this Court under 28 U.S.C. § 1332.

2

In the months and years prior to this incident, Mitchell, Mrs. Sims, and other St. Andrews residents had complained to Bay Hills and Century Golf personnel about errant shots from the 15th tee regularly entering the condominium parking lot. Compl. ¶ 17; Ans. ¶ 17; Pl.'s Opp., ECF No. 20-1 at 11. Joann Sims testified that she first complained to the Defendants' employees in the year 2000. ECF No. 20-1 at 11; Sims Dep. 18-19. Sims wrote numerous letters over the years, including one in 2005 describing how the Plaintiff had been hit in the face with a ball. ECF No. 20-1 at 11; Sims Dep. 30-33. Golf balls entered the parking lot on a weekly or daily basis, and the Simses' condominium sustained damage, including broken windows. Pl.'s Opp., ECF No. 20-1 at 11, 23; Mitchell Dep. 21-22. The complaints by St. Andrews residents were the subject of an Internet article on March 21, 2011. ECF No. 20-5. The Defendants acknowledged that they were aware that golf balls from the 15th tee entered St. Andrews property but stated that they could not rectify the issue because of costs. *Id.*

On or about May 8, 2011, Mitchell was unloading a van in the St. Andrews parking lot when a golf ball struck her leg. Compl. ¶ 15. The ball that struck her was driven by an unknown golfer from the elevated tee box of the 15th hole at Bay Hills, approximately 182 yards away. *Id.*; Pl.'s Opp., ECF No. 20-1 at 14. Mitchell sustained a wound to her leg that required hospital treatment. Compl. ¶ 16. Subsequently, the wound did not heal properly and she required months of extensive additional care. *Id.* Although the wound to Mitchell's leg eventually improved, she alleges that she suffers permanent effects from the injury. *Id.*

Mitchell filed her Complaint in this Court. ECF No. 1. The Defendants moved for leave to file an Amended Answer, and for summary judgment. ECF Nos. 17, 19.

ANALYSIS

I. **Defendants' Motion to Amend**

As an initial matter, this Court addresses the Defendant's Motion for Leave to File Amended Answer. Specifically, the Defendants wish to amend their Answer to include the argument that all of the Plaintiff's claims are barred by Maryland's statute of repose. Md. Code Ann., Cts. & Jud. Proc. § 5-108. That statute generally provides that no cause of action accrues from an allegedly unsafe condition of real property occurring more than twenty years after the date of the improvement to said real property.

A. Waiver

The Plaintiff argues that the Defendants have waived the defense based on the statute of repose. She asserts that the statute of repose defense is an affirmative defense that was required to be pled in the Defendants' Answer pursuant to Rule 8(c) of the Federal Rules of Civil Procedure. However, as recently noted by Judge Chasanow of this Court, "the prevailing rule is that a statute of repose is not an affirmative defense that needs to be pleaded in a defendant's answer to avoid waiver." *Chang-Williams v. United States*, ___ F. Supp. 2d ___ , No. DKC-10-0783, 2013 WL 4454597, at *19 n.9 (D. Md. Aug. 15, 2013) (collecting cases). Moreover, despite the Plaintiff's arguments to the contrary, there is no unfair surprise or prejudice in allowing the Defendants to plead the statute of repose at this juncture. Accordingly, the Defendants are permitted to amend their Answer to include a statute of repose defense.

B. Statute of Repose

4

The Plaintiff argues that even if the Defendants have not waived the statute of repose defense, that defense is nonetheless inapplicable to this case. Section 5-108 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland applies to "injuries after improvements to property." Md. Code Ann., Cts. & Jud. Proc. § 5-108. The statute provides that "[e]xcept as provided by this section,[3] no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use." *Id.* § 5-108(a). The purpose of the statute of repose is to preclude liability for "latent defects in design, construction, and maintenance" after the specified period. *Carven v. Hickman*, 763 A.2d 1207, 1212 (Md. Ct. Spec. App. 2000), *aff'd*, 784 A.2d 31 (Md. 2001).

It is not disputed that a golf course is an improvement within the meaning of Section

---

[3] The Plaintiff argues that the Defendants in this case are subject to an exception to the statute of repose. Section 5-108 provides that "This section does not apply if . . . the defendant was in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred." Pl.'s Mem., ECF No. 20-1 at 6-9 (citing Md. Code Ann., Cts. & Jud. Proc. § 5-108(d)(2)(i). This exception is listed under the bold-faced heading "**Personal injury or death caused by asbestos**," which is not at issue in this case. Md. Code Ann., Cts. & Jud. Proc. § 5-108(d). The Plaintiff's argument based on the legislative history of the statute of repose ignores the plain language of the statute as written. *See Burns v. Bechtel Corp.*, 66 A.3d 1187, 1192 (Md. Ct. Spec. App. 2013) ("When the language of a statute is plan and clear and expresses a meaning consistent with the statute's apparent purpose, no further analysis of legislative intent is ordinarily required." (quoting *Rose v. Fox Pool Corp.*, 643 A.2d 906, 910 (Md. 1994)). While this Court is "not precluded from consulting legislative history as part of the process of determining the legislative purpose or goal of the law," *Rose*, 643 A.2d at 910 (citation and internal quotation marks omitted), the Court of Appeals of Maryland has interpreted the exceptions in Section 5-108(d) to apply only to asbestos cases. *Hagerstown Elderly Assocs. Ltd. P'Ship v. Hagerstown Elderly Bldg. Assocs. Ltd. P'Ship*, 793 A.2d 579, 583 n.3 (Md. 2002) ("Section 5-108(d) provides an exception to the twenty-year period set forth in subsection (a) and the ten-year period set forth in subsection (b) for certain actions based on injuries arising from exposure to asbestos products. That exception does not apply in this case."). Thus, the "actual possession and control" exception does not apply to the Defendants in this case.

5-108[4] and it is agreed that Bay Hills opened in 1968, more than twenty years before the alleged injury in this case.[5] Thus, the statute of repose bars claims for injury resulting from a defective and unsafe condition on the Bay Hills golf course.

In her Memorandum in Opposition, the Plaintiff argues that her injuries were not caused by the allegedly defective condition itself, but by a combination of the actions of the Defendants and the unknown golfer who struck the errant ball. ECF No. 20-1 at 12 ("In this case, the layout of the tee box and fairway on the 15th hole was problematic, but it was the negligent actions and inactions of Bay Hills and Century Golf in allowing golfers to use the property unchecked and without barriers in place that caused the harm."). However, Mitchell alleges negligence against the Defendants based in part on the "design" of the 15th hole. Compl. ¶¶ 21(c)-(e), 28(c)-(e), 35(c)-(e). Accordingly, the statute of repose defense is applicable to any claim of negligent design. It would not be applicable to a claim of failure to exercise due care in controlling the actions of golfers. Furthermore, it would not be applicable to any claims for nuisance.

Therefore, the Defendants' Motion to Amend their Answer is granted. In light of the fact that the statute of repose is applicable to a portion of the Plaintiff's claims, but not all of

---

[4] The parties do not cite any cases applying Section 5-108 to a golf course, and perhaps reflecting the unique nature of the Plaintiff's claims in this case, it appears that no such cases exist.

[5] The Plaintiff argues that the statute of repose did not begin running until St. Andrews was completed in 1996. She also argues that the physical conditions on the course, as well as technology in golfing equipment, have changed since 1968 such that the time limit in the statute of repose has not yet run. Mitchell cites no authority for these propositions. Because the statute of repose "begins to run from the occurrence of some event other than the event of an injury that gives rise to a cause of action"—the completion of the Bay Hills golf course—the claims based on a defective condition are barred regardless of intervening events raised by the Plaintiff. *Anderson v. United States*, 46 A.3d 426, 438 (Md. 2012) ("Thus, a statute of repose may extinguish a potential plaintiff's right to bring a claim before the cause of action accrues.") (answering a certified question of law from the Fourth Circuit).

6

the claims asserted, this Court considers the substance of the Plaintiff's claims on those remaining theories of recovery.

## II. Defendants' Motion for Summary Judgment

The Defendants argue that they are entitled to summary judgment as a matter of law on all claims asserted in the Plaintiff's Complaint. Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Liberty Lobby*, 477 U.S. at 249-50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

### A. Negligence

The Plaintiff claims in Counts 1, 2, and 3 that the Defendants negligently failed to "take sufficient measures" to prevent golf balls hit from the 15th tee from entering the St. Andrews parking lot and injuring her. The Defendants argue that they are entitled to summary judgment on the Plaintiff's negligence claims because they had no duty to her to protect her from the actions of the unknown golfer who hit the shot.

Whether a legal duty exists is a question of law to be decided by the court. *Valentine v. On Target, Inc.*, 727 A.2d 947, 949 (Md. 1999). In general, under Maryland law, "there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists either between the actor and the third person or between the actor and the person injured." *Patton v. United States of Am. Rugby Football*, 851 A.2d 566, 571 (Md. 2004) (quoting *Ashburn v. Anne Arundel Cnty.*, 510 A.2d 1078, 1083 (Md. 1986)). It is also important to consider the policy reasons supporting a negligence claim, namely discouraging or encouraging specific behavior by one party for the benefit of another. *Patton*, 851 A.2d at 571 (citing *Valentine*, 727 A.2d at 950). To that end, foreseeability "alone is insufficient to establish a duty under Maryland law." *Id.* (quoting *Remsburg v. Montgomery*, 831 A.2d 18, 26 (Md. 2003)). Rather, "[a] special duty to protect another from the acts of a third party may be established '(1) by statute or rule; (2) by contractual or other private

8

relationship; or (3) indirectly or impliedly by virtue of the relationship between the tortfeasor and a third party.'" *Remsburg*, 831 A.2d at 27 (quoting *Bobo v. State*, 697 A.2d 1371, 1376 (Md. 1997)). A duty based on an implied or indirect special relationship may arise out of either: "(1) the inherent nature of the relationship between the parties; or (2) by one party undertaking to protect or assist the other party, and thus often inducing reliance upon the conduct of the acting party." *Remsburg*, 831 A.2d at 30.

Because in this case, no statutory or contractual basis for a special relationship exists, this Court considers whether a special duty can be implied. As to the first avenue of showing an implied duty, there is nothing in the inherent relationship between a golf course and an adjacent property owner that imposes a special obligation to protect from errant golf shots by third parties. As to the second basis for the creation of an implied special relationship, the Defendants never undertook to protect Mitchell from errantly hit golf balls. Although the Plaintiff argues that Bay Hills and Century Golf had notice of complaints, the Defendant expressly disavowed any obligation to prevent golf balls from entering St. Andrews property. Thus, there is no special duty implied on the part of the Defendants in this case.[6]

This Court notes that the Plaintiff does not cite any authority analyzing the duty of golf courses in particular. Instead, she frames her argument in terms of a possessor of land's duty to control the conduct of a licensee, under the Restatement (Second) of Torts, which provides:

---

[6] While the parties disagree as to the import of the fact that the Plaintiff did not own the condominium, this issue is not material because no duty existed regardless of the specific nature of Mitchell's property interest.

9

> If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 318 (1965) ("Duty of Possessor of Land or Chattels to Control Conduct of Licensee"). Restatement Section 318, by its terms, pertains to a defendant's duty to prevent dangerous conduct by a third party that is intentional or reckless. *See, e.g.*, *Brogan v. Philadelphia*, 29 A.2d 671 (Pa. 1943) (owners of bridges over highways had duty to prevent children from throwing rocks onto passing cars below; cited by Plaintiff); Restatement (Second) of Torts § 318 cmt. d (1965) (if a third party "persistently uses [the property] in a manner dangerous to others, the possessor may be required to terminate his consent to its use to escape liability").[7] Such cases have no application to the present circumstances, where the third party, the unknown golfer, was engaged in the lawful activity for which the golf course was intended. There is no evidence that the unknown golfer, or any other golfer, intentionally or recklessly hit any shot toward St. Andrews and the Plaintiff. Indeed, the Plaintiff argues that the Defendants were negligent simply by "permit[ing] golfers of varying abilities to use its golf course." ECF No. 20-1 at 19. It is perhaps axiomatic that, in the sport of golf, the ball does not always go straight. *Hennessey v. Pyne*, 694

---

[7] In a recent case, Judge Nickerson of this Court allowed a claim for a violation of Section 318 of the Restatement to survive a motion to dismiss. *Baublitz v. Peninsula Regional Med. Ctr.*, No. WMN-10-0819, 2010 WL 3199343, at *3-4 (D. Md. Aug. 12, 2010) (plaintiff alleged that hospital continued to allow cardiologist to intentionally perform unnecessary heart stent procedures using hospital facilities and knew or should have known that that he was likely to do so). While Judge Nickerson acknowledged that *Baublitz* was "not the typical case" under Section 318 of the Restatement, that decision is illustrative of the intentional and dangerous conduct that typifies such a claim.

10

A.2d 691, 698 (R.I. 1997) ("Even the utmost concentration and tedious preparation that often accompanies a golfer's shot does not guarantee that the ball will be lofted onto the correct path." (citation, internal quotation marks, and alterations omitted)). This Court is unwilling to consider golfing itself to be a dangerous use of a golf course, or to conclude that players who hit errant tee shots "persistently use[ ] [the property] in a manner dangerous to others." Restatement (Second) of Torts § 318 cmt. d (1965).

In sum, the Defendants were under no special duty to protect the Plaintiff from a golf ball errantly struck by a third party. Accordingly, the Defendants are entitled to summary judgment on the Plaintiff's claims for negligence in Counts 1, 2, and 3.

**B. Nuisance**

In Counts 4, 5, and 6, the Plaintiff asserts claims of nuisance. A private nuisance is "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 94 (Md. 2013) (quoting *Wietzke v. Chesapeake Conference Ass'n*, 26 A.3d 931, 943 (Md. 2011)). "Not every interference with a plaintiff's enjoyment and use of land, however, will support a cause of action for nuisance."[8] *Id.* (citing *Wash. Suburban Sanitary Comm'n v. CAE-Link Corp.*, 622 A.2d 745, 749 (Md. 1993)). "To succeed on a nuisance claim, a plaintiff must establish an unreasonable and substantial interference with his or her use and enjoyment of his or her property, such that the injury is 'of such character as to diminish materially the value of the property as a dwelling . . . and seriously interfere with the ordinary comfort and enjoyment of it.'" *Id.* (quoting *Wash.*

---

[8] The doctrine of nuisance is distinct from that of trespass, for which a claim may be based on a single act by a defendant. *Exxon Mobil Corp.*, 71 A.3d at 93 ("An action for trespass may lie when a defendant interferes with a plaintiff's interest in the exclusive possession of the land by entering or causing something to enter the land."). There is no claim for trespass in this case.

*Suburban Sanitary Comm'n*, 622 A.2d at 759). A court's analysis of this issue requires "a balance of the competing property interests at stake." *Wietzke*, 26 A.3d at 948.

The errant golf balls that entered the St. Andrews property do not constitute the substantial and unreasonable disruption to enjoyment of property necessary to sustain a nuisance cause of action.[9] One who chooses to live next to a golf course, and gain the benefit of a "country club" environment, must accept to a reasonable degree the accompanying annoyance of golf balls entering the property. *Nussbaum v. Lacopo*, 265 N.E.2d 762, 765 (N.Y. Ct. App. 1970). Of particular relevance to the question of the reasonableness of intrusion by golf balls is whether a golf course changed the manner in which it operated after a plaintiff moved to the adjacent property. *Compare Hellman v. La Cumbre Golf & Country Club*, 8 Cal. Rptr. 2d 293 (Cal. Ct. App. 1992) (where owners of home adjacent to golf course bought house well after course was built, golf balls entered their property every day, plaintiffs collected 1,300 balls since 1985, cars and house were hit and people nearly hit, golf course layout and rate of intruding balls did not change, disruption was not continuous enough to constitute nuisance), *with Bechhold v. Mariner Props., Inc.*, 576 So. 921 (Fla. Dist. Ct. App. 1991) (summary judgment on nuisance claim inappropriate where neighbors had been finding twelve golf balls per year in their yard, but after course

---

[9] The Defendant argues that the Plaintiff, who is not the owner of the condominium, has no right to bring a nuisance claim. The Plaintiff cites *Green v. Shoemaker*, 73 A. 688 (Md. 1909) for the proposition that a non-owner tenant of a property can bring a nuisance claim for damage to property as well as physical injury. The plaintiff in *Green* was a renter whose apartment was struck by rocks sent flying by the adjacent railroad company's blasting. The Court of Appeals of Maryland held that the plaintiff was not precluded from recovering for property damage as well as fright. Both the character of the plaintiff's property interest and the activity that caused the injury in *Green* are distinguishable from the circumstances in this case. Therefore, *Green* has no application to the Plaintiff's claim that she suffered a substantial interference with her enjoyment of the property, in particular the parking lot. Even assuming that the Plaintiff has a sufficient interest in the property, her nuisance claim fails as a matter of law.

was redesigned and fairway narrowed, the number of balls entering their property increased to approximately 1,000 per year).

The evidence in this case shows that, at the time of the injury, Bay Hills was operating in the same manner as when the Plaintiff began living at St. Andrews. The golf course has been in operation for decades, predating the construction of the St. Andrews community. Significant costs would be incurred in trying to prevent any errant golf balls from periodically entering that residential community. ECF No. 17-3 at 9; ECF No. 20-5. The fact that the condominium may have been struck several times in a week over the years is an annoyance appurtenant to the benefits of living next to a golf course. Finally, while it is unfortunate that the Plaintiff sustained an injury at the hands of an unknown actor, public policy does not support her right to recover from the Defendants. Bearing in mind the recreational, environmental, and aesthetic benefits that golf courses may provide to adjacent property owners, the nuisance doctrine cannot be extended to permit the imposition of liability against a golf course operating in a reasonable everyday manner. This Court concludes as a matter of law that the Defendants did not impose a nuisance on the Plaintiff. Accordingly, summary judgment is granted in the Defendants' favor on the Plaintiff's claims for nuisance in Counts 4, 5, and 6.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 17) and Motion to File Amended Answer (ECF No. 19) are GRANTED.

A separate Order follows.

Dated: December 11, 2013 　　　　　　　　　/s/　　　　　　　　　
　　　　　　　　　　　　　　　　　　Richard D. Bennett
　　　　　　　　　　　　　　　　　　United States District Judge